**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| COMMWORKS SOLUTIONS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>EARTHLINK, LLC,<br><br>    Defendant. | Civil Action No. 2:25-cv-00716<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff CommWorks Solutions, LLC ("CommWorks" or "Plaintiff") files this complaint against Defendant EarthLink, LLC ("Defendant" or "EarthLink") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.      This is a patent infringement action for Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"), issued by the United States Patent and Trademark Office ("USPTO"):

| | Patent No. | Title | Reference |
|---|---|---|---|
| 1. | 6,832,249 | Globally Accessible Computer Network-Based Broadband Communication System with User-Controllable Quality of Information Delivery and Flow Priority | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/6832249 |
| 2. | 6,891,807 | Time Based Wireless Access Provisioning | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/6891807 |

| | Patent No. | Title | Reference |
|---|---|---|---|
| 3. | 7,027,465 | Method for Contention Free Traffic Detection | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7027465 |
| 4. | 7,760,664 | Determining and Provisioning Paths in a Network | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7760664 |
| 5. | 8,116,315 | System and Method for Packet Classification | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8116315 |
| 6. | RE44,904 | Method for Contention Free Traffic Detection | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/RE44904 |

2.     Plaintiff seeks monetary damages.

## PARTIES

3.     CommWorks is a limited liability company formed under the laws of the State of Georgia with its registered office address located in Alpharetta, Georgia (Fulton County).

4.     Defendant EarthLink, LLC is a corporation organized under the laws of the state of Delaware with a principal place of business at 980 Hammond Drive, Suite 400, Atlanta, Georgia 30328, and can be served through its registered agent The Corporation Trust Company at Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801. Upon public information and belief, Defendant EarthLink, LLC has maintained a registration to do business in Texas since at least February 8, 2019.

5.     Defendant has a business location in this Judicial District in Athens, Texas.  *See Earthlink Careers*, EARTHLINK (last visited July 9, 2025), *available at* https://www.earthlink.net/about-us/careers/.

6.     On information and belief, Defendant has directly and/or indirectly developed, designed, manufactured, distributed, marketed, offered to sell and/or sold infringing products and

services in the United States, including in the Eastern District of Texas, and otherwise directs infringing activities to this District in connection with its products and services as set forth in this Complaint.

## JURISDICTION AND VENUE

7.      CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

8.      This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

9.      Defendant is subject to this Court's specific and general personal jurisdiction under due process due at least to Defendant's substantial business in this judicial district, including: (i) at least a portion of the infringements alleged herein; (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District; and (iii) having an interest in, using or possessing real property in Texas.

10.      Specifically, Defendant has done business in and has committed acts of infringement in this District directly, through intermediaries, by contributing to and through their inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this District.

11.      Defendant has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities.  Defendant regularly sells (either directly or indirectly), its products within this District.  For example, upon information and belief, Defendant has placed its products into the stream of commerce *via* an established distribution

channel with the knowledge or understanding that such products are being sold in this District and the State of Texas.  Defendant is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and pervasive business in this State and District, including its infringing activities alleged herein, from which Defendant derives substantial revenue from goods sold to residents and consumers.

12.    Defendant sells, offers for sale, uses, makes and/or imports products that are and have been used, offered for sale, sold, and purchased in the Eastern District of Texas, and Defendant has committed acts of infringement in the Eastern District of Texas, has conducted business in the Eastern District of Texas, and/or has engaged in continuous and systematic activities in the Eastern District of Texas.

13.    Under 28 U.S.C. §§ 1391(b)-(d) and 1400(b), venue is proper in this judicial district as to Defendant at least because Defendant has transacted business in this District and committed acts of infringement from this District, including, but not limited to, the sale and use of the products identified below.

14.    On information and belief, as identified above in paragraph 5, Defendant has a business location in this Judicial District in Athens, Texas and has numerous employees in Texas. *See Earthlink Careers*, EARTHLINK (last visited July 9, 2025), *available at* https://www.earthlink.net/about-us/careers/; *see also Job Listings: Customer Service (Overnights M-F 9pm-6am)*, EARTHLINK (last visited July 9, 2025), *available at* https://www.earthlink.net/about-us/careers/job-listings/ ("In this role, you will provide support among our Customer Support department out of our office in Athens, TX.").

15.    On information and belief, Defendant has authorized sellers and sales representatives that offer and sell products identified in this Complaint throughout the State of Texas, including

in this Judicial District, and to consumers throughout this Judicial District.

## THE ACCUSED PRODUCTS

16.     CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

17.     Defendant uses, causes to be used, manufactures, provides, supplies, or distributes the EarthLink's services and/or devices such as the EX2210-T0 Dual-Band Wireless AX1800 Gigabit Ethernet Gateway, with IEEE 802.3ah support; services and devices with Wi-Fi Protected Setup (WPS) functionality, including the Titan 3000, EX2210-T0, Axon EL4000; and services and/or devices with Wi-Fi Multimedia (WMM) and/or 802.11-2007+ wireless QoS functionality such as the exemplary EX2210-T0 Dual-Band Wireless AX1800 Gigabit Ethernet Gateway; and the Cisco Nexus Switches Series  (collectively, the "Accused Products").

18.     On information and belief, Defendant provides information and assistance to its customers to enable them to use the Accused Products in an infringing manner as described below.

19.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

20.     By letter dated April 17, 2020, addressed to Glenn Goad at EarthLink, LLC (the "Notice Letter"), Defendant received notice of its infringement of CommWorks' patents, including the Asserted Patents.

## COUNT I:   INFRINGEMENT OF U.S. PATENT NO. 6,832,249

21.      CommWorks repeats and re-alleges the allegations in paragraphs 1-20 above as though fully set forth in their entirety.

22.    For purposes of this Count I, the Accused Products include Defendant's services and/or devices with IEEE 802.3ah support, such as the exemplary EX2210-T0 Dual-Band Wireless AX1800 Gigabit Ethernet Gateway.

23.    The USPTO duly issued U.S. Patent No. 6,832,249 (the "'249 patent") on December 14, 2004, after full and fair examination of Application No. 09/860,801 which was filed May 18, 2001.  The '249 patent is entitled "Globally Accessible Computer Network-Based Broadband Communication System with User-Controllable Quality of Information Delivery and Flow Priority."

24.    CommWorks owns all substantial rights, interest, and title in and to the '249 patent, including the sole and exclusive right to prosecute this action and enforce the '249 patent against infringers and to collect damages for all relevant times.

25.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '249 patent.

26.    The claims of the '249 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. At the time of the invention, millions of Internet users being online simultaneously, thereby causing congestion (too many users) and latency (long pauses and delays), presented a difficult bandwidth load management challenge.  '249 patent at 1:32-34, 2:34-36.  No conventional routing system existed that avoided the congestion and best effort delivery methods then used by the Internet.  *Id.* at 2:8-10.  Conventional routing systems relating to multiple OSI layers also did not consistently ensure quality of service.  *Id.* at 6:53-63.

27.    The invention of the '249 patent improved upon the conventional services delivery systems by enabling quality of service control by content providers, Application Service Providers

(ASPs), ISPs, and, by extension, their customers. *Id.* at 3:60-63. Additional improvements over the conventional services delivery systems afforded by the invention of the '249 patent included bridging the gaps between the layers of the OSI reference model; ensuring more control by users over the priority of their information flow; more control by network administrators over the congestion of their networks; and more control by content providers over costs and the experiences they provide to their users. *Id.* at 3:65-4:2, 6:53-63.

28.     Defendant has directly infringed the '249 patent by making, using, offering to sell, selling, and/or importing the Accused Products identified above.

29.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 11 of the '249 patent, as detailed in **Exhibit A** to this Complaint (Evidence of Use Regarding U.S. Patent No. 6,832,249).

30.     On information and belief, Defendant has infringed the '249 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States the Accused Products.

31.     For example, as detailed in **Exhibit A**, Defendant has infringed at least claim 11 of the '249 Patent by making, using, offering to sell, selling, and/or importing the Accused Products, which perform a method for providing broadband communications over a multi-layered network having a plurality of Open System Interconnection (OSI) reference model layers functioning therein, comprising: monitoring at least one OSI reference model layer functioning in the multi-layered network; determining that a quality of service event has occurred in the multilayered network; determining that the quality of service event occurred at a layer N in the OSI reference model; responding to the quality of service event in the multi-layered network by changing

network provisioning at a layer less than N; and signaling that the network provisioning at the layer less than N has been changed.

32.    From April 2020 to the expiry of the '249 Patent, Defendant had also indirectly infringed the '249 patent by inducing others to directly infringe the '249 patent.  Defendant had induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '249 patent by providing or requiring use of the Accused Products.  Defendant had taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringed one or more claims of the '249 patent, including, for example, claim 11 of the '249 patent.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant had performed these steps, which constitute induced infringement with the knowledge of the '249 patent and with the knowledge that the induced acts constitute infringement.  Defendant had been aware that the normal and customary use of the Accused Products by others would infringe the '249 patent.

33.    From April 2020 to the expiry of the '249 patent, Defendant had also indirectly infringed by contributing to the infringement of the '249 patent.  Defendant had contributed to the direct infringement of the '249 patent by its personnel, contractors, distributors, and customers. The Accused Products have special features that were specially designed to be used in an infringing way and that have no substantial uses other than ones that infringed one or more claims of the '249 patent, including, for example, claim 11 of the '249 patent.  The special features constituted a

material part of the invention of one or more of the claims of the '249 patent and were not staple articles of commerce suitable for substantial non-infringing use.

34.    Defendant had knowledge of the '249 patent when it received the Notice Letter in April of 2020.

35.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of CommWorks' patent rights.

36.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

37.    Defendant's direct infringement of one or more claims of the '249 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

38.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 6,891,807

39.    CommWorks repeats and re-alleges the allegations in paragraphs 1-20 above as though fully set forth in their entirety.

40.    For purposes of this Count II, the term "Accused Products" include Defendant's services and/or devices with Wi-Fi Protected Setup (WPS) functionality, such as the exemplary Titan 3000, EX2210-T0, and Axon EL4000.

41.    The USPTO duly issued U.S. Patent No. 6,891,807 (the "'807 patent") on May 10,

2005, after full and fair examination of Application No. 10/341,847 which was filed on January 13, 2003. The '807 patent is entitled "Time Based Wireless Access Provisioning."

42.     CommWorks owns all substantial rights, interest, and title in and to the '807 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

43.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '807 patent.

44.     The claims of the '807 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

45.     The written description of the '807 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

46.     For example, at the time of the invention, wireless access to data networks was not yet conventional.  Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '807 patent at col. 3:5-18.  Further, wireless devices that did have a

dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:19-28.

47.     The invention of the '807 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance." *Id.* at col. 3:29-33.  The invention of the '807 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system. *Id.* at col. 3:34-41.  The invention of the '807 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication.  *Id.* at col. 3:42-50. Moreover, the structure of the devices described in the '807 patent was not conventional at the time of the invention.  Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

48.     Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 17 of the '807 patent, as detailed in **Exhibit B** to this Complaint (Evidence of Use Regarding U.S. Patent No. 6,891,807).

49.    On information and belief, Defendant has infringed one or more claims of the '807 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States the Accused Products.

50.    For example, as detailed in **Exhibit B**, Defendant has infringed at least claim 17 of the '807 patent by making, using, offering to sell, selling, and/or importing the Accused Products, which include a time based network access provisioning system between a wireless device and a network.  The time based network access provisioning system comprises a network access point connected to the network, the network access point comprising logic for tracking operation of the wireless device.  *Id.*  The time based network access provisioning system further comprises logic for provisioning the wireless device if the operation of the wireless device occurs within an activatable time interval.  *Id.*

51.    From April 2020 until the '807 patent's expiry, Defendant had also indirectly infringed one or more claims of the '807 patent by inducing others to directly infringe said claims. Defendant had induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '807 patent by providing or requiring use of the Accused Products.  Defendant had taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '807 patent, including, for example, claim 17.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.   Defendant had performed these steps, which

constitutes induced infringement with the knowledge of the '807 patent and with the knowledge that the induced acts constitute infringement. Defendant had been aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '807 patent.

52.    From April 2020 until the '807 patent's expiry, Defendant had also indirectly infringed by contributing to the infringement of one or more claims of the '807 patent. Defendant had contributed to the direct infringement of the '807 patent by its personnel, contractors, distributors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '807 patent, including, for example, claim 17. The special features constituted a material part of the invention of one or more of the claims of the '807 patent and were not staple articles of commerce suitable for substantial non-infringing use.

53.    Defendant had knowledge of the '807 patent when it received the first Notice Letter in April of 2020.

54.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of CommWorks' patent rights.

55.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

56.    Defendant's direct infringement of one or more claims of the '807 patent has been willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

57.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for

such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,027,465

58.    CommWorks repeats and re-alleges the allegations in paragraphs 1-20 above as though fully set forth in their entirety.

59.    For purposes of this Count III, the term "Accused Products" shall include Defendant's services and/or devices with Wi-Fi Multimedia (WMM) and/or 802.11-2007+ wireless QoS functionality such as the exemplary EX2210-T0 Dual-Band Wireless AX1800 Gigabit Ethernet Gateway.

60.    The USPTO duly issued U.S. Patent No. 7,027,465 (the "'465 patent") on April 11, 2006, after full and fair examination of Application No. 10/167,986 which was filed on June 11, 2002.  The '465 patent is entitled "Method For Contention Free Traffic Detection."

61.    CommWorks owns all substantial rights, interest, and title in and to the '465 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

62.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '465 patent.

63.    The claims of the '465 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

64.    The written description of the '465 patent describes in technical detail each limitation

of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

65.     For example, at the time of the invention, "conventionally … transmission differentiation based on priority was not conducted at all."  '465 patent at col. 2:9-10. Obtaining priority information for traffic transmitted through an Access Point (AP) required searching all fields in all frames for indications of the priority state of the actual data frame, resulting in all fields in all frames being checked and all headers being analyzed, starting from the outer most headers, until the right field in the header had been found.  *Id.* at col. 1:53-59.  This measure was very complex, took a long time, and required a large amount of processing, especially for complex tunneling protocols.  *Id.* at col. 1:62-65.  All the frame headers and protocols which can be included in the data frames transmitted via the network had to be known, hence, the amount of information needed for identifying the data was huge.  *Id.* at col. 1:66-2:4.  Such a huge amount of information was typically too heavy to handle in small and low price equipment like WLAN access points (AP).  *Id.*  Further, then existing systems according to the IEEE 802.11 standard did not separate traffic based on priority.  *Id.* at col. 2:11-15.

66.     The invention of the '465 patent improved upon conventional network traffic routing systems by providing methods by which priority traffic can easily be distinguished from normal traffic without the need of complex processing making it possible to execute in a low cost and possibly low performance AP.  *Id.* at col. 2:19-23, 2:60-62, 3:43.  The methods of the invention of the '465 patent further improved upon conventional network traffic routing systems by easily finding higher priority traffic from the stream of MAC layer frames without necessarily requiring

knowledge of the upper layer protocols. *Id.* at col. 2:53-56. The methods of the invention of the '465 patent further improved upon conventional network traffic routing systems by being protocol-independent and flexible such that their configuration may be done in an external configuration program; with the Access Point not needing to know anything about the processed traffic; further alleviating the need of complex structure of the device. *Id.* at col. 2:63-66, col. 3:5-11. A further advantage over conventional network traffic routing systems is that installation of new software or hardware in the network element would not be required when new protocols or modified protocols are introduced in the network. *Id.* at col. 3:12-21.

67.     Defendant has directly infringed one or more claims of the '465 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

68.     Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '465 patent, as detailed in **Exhibit C** to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,027,465).

69.     On information and belief, Defendant, using the Accused Products, has infringed one or more claims of the '465 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by performing methods for contention free traffic detection.

70.     For example, as detailed in **Exhibit C**, Defendant has infringed at least claim 1 of the '465 patent by performing a method for detecting priority of data frames in a network. The method for detecting priority of data frames comprises the step of extracting a bit pattern from a predetermined position in a frame. *Id.* The method for detecting priority of data frames further comprises the step of comparing said extracted bit pattern with a search pattern. *Id.* The method for detecting priority of data frames further comprises the step of identifying a received frame as

a priority frame in case said extracted bit pattern matches with said search pattern.  *Id.*  In the method for detecting priority of data frames, the predetermined position in said frame is defined by the offset of said bit pattern in said frame.  *Id.*

71.    From April 2020 until the '465 patent's expiry, Defendant had also indirectly infringed one or more claims of the '465 patent by inducing others to directly infringe said claims. Defendant had induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '465 patent by providing or requiring use of the Accused Products.  Defendant had taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '465 patent, including, for example, claim 1.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant performed these steps, which constitutes induced infringement with the knowledge of the '465 patent and with the knowledge that the induced acts constituted infringement.  Defendant had been aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '465 patent.

72.    From April 2020 until the '465 patent's expiry, Defendant had also indirectly infringed by contributing to the infringement of one or more claims of the '465 patent.  Defendant had contributed to the direct infringement of one or more claims of the '465 patent by its personnel, contractors, distributors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than

ones that infringe one or more claims of the '465 patent, including, for example, claim 1 of the '465 patent. The special features constituted a material part of the invention of one or more of the claims of the '465 patent and were not staple articles of commerce suitable for substantial non-infringing use.

73.     Defendant had knowledge of the '465 patent when it received the Notice Letter in April of 2020.

74.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of CommWorks' patent rights.

75.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

76.     Defendant's direct infringement of one or more claims of the '465 patent has been, willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

77.     CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: <u>INFRINGEMENT OF U.S. PATENT NO. 7,760,664</u>

78.     CommWorks repeats and re-alleges the allegations in paragraphs 1-20 above as though fully set forth in their entirety.

79.     For purposes of this Count IV, the Accused Products include the Cisco Nexus Switches Series.

80.     The USPTO duly issued U.S. Patent No. 7,760,664 (the "'664 patent") on July 20,

2010, after full and fair examination of Application No. 11/101,136, which was filed on April 7, 2005. The '664 patent is entitled "Determining and Provisioning Paths in a Network."

81.     CommWorks owns all substantial rights, interest, and title in and to the '664 patent, including the sole and exclusive right to prosecute this action and enforce the '664 patent against infringers and to collect damages for all relevant times.

82.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '664 patent.

83.     The claims of the '664 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. At the time of the invention, graphical systems for provisioning network paths were not yet conventional. Prior art systems for provisioning network paths typically modeled every port of every network element as a node on a graph and modeled every physical link that interconnected these ports to one another as links that interconnected the nodes of the graph. '664 patent at 1:27-36. This resulted in very large, complex, and inefficient model graphs that did not adapt well to diverse network elements and large networks and created performance and scalability issues due to the demanding processing requirements associated with such graphs. *Id.* at 2:30-40.

84.     The invention of the '664 patent improved upon existing systems for provisioning network paths by enabling management of links instead of nodes in a graphical interface, reducing route processing, resulting in a corresponding reduction in overhead and resources required to route network traffic from one node to another. '664 patent at 3:32-35. The invention of the '664 patent further improved upon existing systems by reducing the number of nodes necessary to consider in routing network traffic from one point to another, greatly reducing the processing

overhead and timeliness associated with making routing decisions. *Id.* at 4:53-65. The invention of the '664 patent further improved upon existing systems by adding considerable flexibility in designing and maintaining routing graphs. *Id.*

85.     Defendant has directly infringed the '664 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

86.     Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 7 of the '664 patent, as detailed in **Exhibit D** to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,760,664).

87.     On information and belief, Defendant has infringed the '664 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States the Accused Products.

88.     For example, as detailed in **Exhibit D**, Defendant, using the Accused Products, has infringed at least claim 7 of the '664 patent by making, using, offering to sell, selling, and/or importing the Accused Products, which perform a method for routing network traffic between a first network and a second network, each of said first and second networks comprising a plurality of network elements, said plurality of network elements connected by a digital cross connect, said method comprising the steps of: determining, with a network configuration management system, the interconnections created by said digital cross connect between at least two network elements in said plurality of network elements; and representing each of said interconnections as a link between said at least two network elements; and storing a status of each of said interconnections in a cross connection status database, wherein the status indicates whether a cross-connection using said digital cross connect was successfully provisioned.

89.     From April of 2020 to the expiry of the '664 patent, Defendant had also indirectly

infringed the '664 patent by inducing others to directly infringe the '664 patent. Defendant had induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '664 patent by providing or requiring use of the Accused Products. Defendant had taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringed one or more claims of the '664 patent, including, for example, claim 7 of the '664 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant had performed these steps, which constitutes induced infringement with the knowledge of the '664 patent and with the knowledge that the induced acts constitute infringement. Defendant had been aware that the normal and customary use of the Accused Products by others would infringe the '664 patent.

90.    From April of 2020 to the expiry of the '664 patent, Defendant had also indirectly infringed by contributing to the infringement of the '664 patent. Defendant had contributed to the direct infringement of the '664 patent by its personnel, contractors, distributors, and customers. The Accused Products have special features that were specially designed to be used in an infringing way and that have no substantial uses other than ones that infringed one or more claims of the '664 patent, including, for example, claim 7 of the '664 patent. The special features constituted a material part of the invention of one or more of the claims of the '664 patent and were not staple articles of commerce suitable for substantial non-infringing use.

91.    Defendant had knowledge of the '664 patent when it received the Notice Letter in

April of 2020.

92.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of CommWorks' patent rights.

93.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

94.    Defendant's direct infringement of one or more claims of the '664 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

95.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V:  INFRINGEMENT OF U.S. PATENT NO. 8,116,315

96.    CommWorks repeats and re-alleges the allegations in paragraphs 1-20 above as though fully set forth in their entirety.

97.    For purposes of this Count V, the Accused Products include Defendant's services and devices, including, for example, EX2210-T0, and Titan 3000.

98.    The USPTO duly issued U.S. Patent No. 8,116,315 (the "'315 patent") on February 14, 2012, after full and fair examination of Application No. 11/471,149, which was filed on June 20, 2006.  The '315 patent is entitled "System and Method for Packet Classification."  A Certificate of Correction was issued on August 28, 2012.

99.    CommWorks owns all substantial rights, interest, and title in and to the '315 patent,

including the sole and exclusive right to prosecute this action and enforce the '315 patent against infringers and to collect damages for all relevant times.

100.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '315 patent.

101.    The claims of the '315 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  At the time of the invention, conventional optical routers or switches did not typically retain the classification of a data packet once the data packet left the ingress edge unit in route to the egress edge unit.  '315 patent at 1:48-51. Conventional routers and switches required the classification process to be repeated at both the ingress and egress interfaces of a switch or router.  *Id.* at 1:48-2:4.  Such an approach would conventionally require specialized classification hardware at both units.  *Id.*

102.    The invention of the '315 patent improved upon the conventional routers and switches by reducing the duplicative hardware and processing requirements used in packet classification. *Id.* at 2:8-43. The invention of the '315 patent further improved upon conventional routers and switches by eliminating delay caused by the reclassification of data packets.  *Id.*  The invention of the '315 patent further improved upon conventional routers and switches by enabling sending of data packets to a destination egress edge node based on classification parameters determined at the ingress edge unit.  *Id.*

103.    Defendant has directly infringed the '315 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

104.    Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 7 of the '315 patent, as detailed in **Exhibit E** to this Complaint (Evidence of Use Regarding U.S. Patent No. 8,116,315).

105.    On information and belief, Defendant has infringed the '315 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States the Accused Products.

106.    For example, as detailed in **Exhibit E**, Defendant, using the Accused Products, has infringed at least claim 7 of the '315 patent by making, using, offering to sell, selling, and/or importing the Accused Products, which perform a method for data packet processing in a telecommunications system, comprising: at an ingress edge unit of a router, determining a set of classification parameters for a data packet arriving at the ingress edge unit, wherein the classification parameters include destination information and one or more quality of service (QoS) parameters for the data packet, and wherein the destination information includes a destination egress port of the router; constructing a classification index including the set of classification parameters for a plurality of data packets, and also including information about a plurality of queues associated with the QoS parameters; forwarding the classification index to at least one destination edge unit of the router, including a destination edge unit associated with the destination egress port associated with the data packet; and forwarding the data packet to the destination egress port according to the classification parameters determined at the ingress edge unit and without requiring reclassification of the data packet.

107.    From April of 2020 to the expiry of the '315 patent, Defendant had also indirectly infringed the '315 patent by inducing others to directly infringe the '315 patent.  Defendant had induced distributors and end-users, including, but not limited to, Defendant's employees, partners,

contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '315 patent by providing or requiring use of the Accused Products. Defendant had taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringed one or more claims of the '315 patent, including, for example, claim 7 of the '315 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant had performed these steps, which constitutes induced infringement with the knowledge of the '315 patent and with the knowledge that the induced acts constitute infringement. Defendant had been aware that the normal and customary use of the Accused Products by others would infringe the '315 patent.

108.    From April of 2020 to the expiry of the '315 patent, Defendant had also indirectly infringed by contributing to the infringement of the '315 patent. Defendant had contributed to the direct infringement of the '315 patent by its personnel, contractors, distributors, and customers. The Accused Products have special features that were specially designed to be used in an infringing way and that have no substantial uses other than ones that infringed one or more claims of the '315 patent, including, for example, claim 7 of the '315 patent. The special features constituted a material part of the invention of one or more of the claims of the '315 patent and were not staple articles of commerce suitable for substantial non-infringing use.

109.    Defendant had knowledge of the '315 patent when it received the Notice Letter in April of 2020.

110.    Furthermore, on information and belief, Defendant has a policy or practice of not

reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of CommWorks' patent rights.

111.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

112.    Defendant's direct infringement of one or more claims of the '315 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

113.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: <u>INFRINGEMENT OF U.S. PATENT NO. RE44,904</u>

114.    CommWorks repeats and re-alleges the allegations in paragraphs 1-20 above as though fully set forth in their entirety.

115.    For purposes of this Count VI, the Accused Products include Defendant's services and/or devices with Wi-Fi Multimedia (WMM) and/or 802.11-2007+ wireless QoS functionality such as the exemplary EX2210-T0 Dual-Band Wireless AX1800 Gigabit Ethernet Gateway.

116.    The USPTO duly and lawfully reissued U.S. Patent No. RE44,904 (the "'904 patent") on May 20, 2014.  The '904 patent is entitled "Method For Contention Free Traffic Detection."

117.    CommWorks owns all substantial rights, interest, and title in and to the '904 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

118.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of the '904 patent.

119.    The claims of the '904 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

120.    The written description of the '904 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

121.    For example, at the time of the invention, "conventionally … transmission differentiation based on priority was not conducted at all." '904 patent at col. 2:9-10.  Obtaining priority information for traffic transmitted through an Access Point (AP) required searching all fields in all frames for indications of the priority state of the actual data frame, resulting in all fields in all frames being checked and all headers being analyzed, starting from the outer most headers, until the right field in the header had been found.  *Id.* at col. 1:63-2:2.  This measure was very complex, took a long time, and required a large amount of processing, especially for complex tunneling protocols.  *Id.* at col. 2:5-8.  All the frame headers and protocols which can be included in the data frames transmitted via the network had to be known, hence, the amount of information needed for identifying the data was huge.  *Id.* at col. 2:8-14.  Such a huge amount of information was typically too heavy to handle in small and low price equipment like WLAN access points (AP).  *Id.*  Further, then existing systems according to the IEEE 802.11 standard did not separate

traffic based on priority.  *Id.* at col. 2:20-25.

122.    The invention of the '904 patent improved upon conventional network traffic routing systems by providing methods by which priority traffic can easily be distinguished from normal traffic without the need of complex processing making it possible to execute in a low cost and possibly low performance AP.  *Id.* at col. 2:29-32, 3:2-4, 3:52-53.  The methods of the invention of the '904 patent further improved upon conventional network traffic routing systems by easily finding higher priority traffic from the stream of MAC layer frames without necessarily requiring knowledge of the upper layer protocols.  *Id.* at col. 2:62-65.  The methods of the invention of the '904 patent further improved upon conventional network traffic routing systems by being protocol-independent and flexible such that their configuration may be done in an external configuration program; with the Access Point not needing to know anything about the processed traffic; further alleviating the need of complex structure of the device.  *Id.* at col. 3:5-8, 3:14-21.  A further advantage over conventional network traffic routing systems is that installation of new software or hardware in the network element would not be required when new protocols or modified protocols are introduced in the network.  *Id.* at col. 3:22-31.

123.    Defendant has directly infringed one or more claims of the '904 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

124.    Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 7 of the '904 patent, as detailed in **<u>Exhibit F</u>** to this Complaint (Evidence of Use Regarding U.S. Patent No. RE44,904).

125.     On information and belief, Defendant, using the Accused Products, has infringed one or more claims of the '904 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by performing methods for contention free traffic detection.

126.     For example, as detailed in **Exhibit F**, Defendant, using the Accused Products, has infringed at least claim 7 of the '904 patent by performing a method comprising: detecting a received frame is a priority frame based, at least in part, on information in the received frame, including extracting a bit pattern from a predetermined position in the received frame and comparing the extracted bit pattern with a search pattern, and wherein the detecting is based on a match between the extracted bit pattern and the search pattern; transmitting the received frame in a transmit period reserved for priority frames in response to the detecting; and adjusting a duration of the transmit period reserved for priority frames based on statistic information regarding sent priority frames. *Id.*

127.     CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## **JURY DEMAND**

128.     CommWorks hereby requests a trial by jury on all issues so triable by right.

## **PRAYER FOR RELIEF**

129.     CommWorks requests that the Court find in its favor and against Defendant, and that the Court grant CommWorks the following relief:

   a.   Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by the Defendant or others acting

in concert therewith;

b.   Judgment that Defendant accounts for and pays to CommWorks all damages to and costs incurred by CommWorks because of Defendant's infringing activities and other conduct complained of herein;

c.   Judgment that Defendant's infringements of the '249, '807, '465, '664, and '315 patents during their life be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

d.   Pre-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

e.   That this Court declare this an exceptional case and award CommWorks its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

f.   All other and further relief as the Court may deem just and proper under the circumstances.

Dated: July 15, 2025                    Respectfully submitted,

                                        By:/s/ James F. McDonough, III

                                        James F. McDonough, III (GA 117088)*
                                        **ROZIER HARDT MCDONOUGH PLLC**
                                        659 Auburn Avenue NE, Unit 254
                                        Atlanta, Georgia 30312
                                        Telephone: (404) 564-1866
                                        Email: jim@rhmtrial.com

                                        Jonathan L. Hardt (TX 24039906)*
                                        **ROZIER HARDT MCDONOUGH PLLC**
                                        712 W. 14th Street, Suite A
                                        Austin, Texas 78701
                                        Telephone: (210) 289-7541
                                        Email: hardt@rhmtrial.com

                                        C. Matthew Rozier (CO 46854)
                                        **ROZIER HARDT MCDONOUGH PLLC**
                                        1001 Bannock Street, Suite 241
                                        Denver, Colorado 80204
                                        Telephone: (404) 779-5305; (202) 316-1591
                                        Email: matt@rhmtrial.com

*Attorneys for Plaintiff COMMWORKS SOLUTIONS, LLC*

                                        * Admitted to the Eastern District of Texas

**List of Exhibits**

A.  Evidence of Use Regarding U.S. Patent No. 6,832,249

B.  Evidence of Use Regarding U.S. Patent No. 6,891,807

C.  Evidence of Use Regarding U.S. Patent No. 7,027,465

D.  Evidence of Use Regarding U.S. Patent No. 7,760,664

E.  Evidence of Use Regarding U.S. Patent No. 8,116,315

F.  Evidence of Use Regarding U.S. Patent No. RE44,904

**List of Attachments**

- Civil Cover Sheet